**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

U.S. BANK NATIONAL ASSOCIATION, solely in its
capacity as Trustee for the registered holders of Morgan
Stanley Capital I Inc., Commercial Mortgage Pass-Through
Certificates, Series 2012-C5, acting by and through Rialto
Capital Advisors, LLC as Special Servicer,

Plaintiff,

v.

767 8TH AVE LLC, SHERMAN MANAGEMENT LLC,
JOGINDER Y. SHARMA, NEW YORK STATE
DEPARTMENT OF TAXATION & FINANCE, NEW
YORK CITY DEPARTMENT OF FINANCE, NEW YORK
CITY ENVIRONMENTAL CONTROL BOARD, & JOHN
DOES 1 THROUGH 10,

Defendants.

Case No. _____

---

## COMPLAINT

Plaintiff U.S. Bank National Association ("U.S. Bank"), solely in its capacity as Trustee

for the benefit of the holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-

Through Certificates, Series 2012-C5 ("Plaintiff"), acting by and through Rialto Capital Advisors,

LLC ("Rialto"), solely in its capacity as Special Servicer, states its complaint as follows:

## NATURE OF THE ACTION

1.      Plaintiff files this action to foreclose on a mortgage securing an $11,500,000 loan

secured by real property having a street address at 302 West 47th Street, New York, New York

10036 (the "Property") improved by, among other things, a fifty-room hotel known as

"EconoLodge Times Square" (the "Hotel").  The Property is also known as 767 8th Avenue, New

York, New York 10036, and the metes and bounds of the Property are more particularly defined in the Mortgage (as defined below).

2.      Starting in April 2020, Borrowers (as defined below) failed to make the monthly payments required under the terms of the Loan (as defined below).

3.      By this action, Plaintiff seeks, among other things, to foreclose the lien of the Mortgage (as defined below), to foreclose the lien of the UCC-1 on the Collateral (as defined below), to recover unpaid sums under the Loan, its attorneys' fees, and the appointment of a receiver to manage the Hotel during the pendency of this action.

## PARTIES

4.      Plaintiff U.S. Bank is a national banking association with its principal place of business at 800 Nicollet Mall, Minneapolis, MN 55402.

5.      Plaintiff is the duly appointed and acting Trustee pursuant to the Pooling and Servicing Agreement (the "PSA") dated July 1, 2012 by and among Morgan Stanley Capital I Inc., as Depositor; Bank Of America, N.A., as Master Servicer; Midland Loan Services, A Division of PNC Bank, N.A., as Special Servicer; Situs Holdings, LLC, as Trust Advisor; U.S. Bank, as Trustee, Certificate Administrator, Certificate Registrar and Authenticating Agent; and Wells Fargo Bank, N.A., as Custodian.  A copy of the relevant portions of the PSA is attached hereto as Exhibit 1.

6.      Pursuant to Section 9.3 of the PSA, the Special Servicer is empowered to, among other things, "to take any and all the actions with respect to Specially Serviced Mortgage Loans that the Master Servicer may perform as set forth in Section 8.3(a), including . . . (ii) to effectuate foreclosure or other conversion of the ownership of any Mortgaged Property securing a Mortgage Loan."

7.      Defendant 767 8th Ave LLC ("767 LLC") is a Delaware limited liability company that maintains a principal place of business at 302 West 47th Street, New York, New York 10036. Neither the members of 767 LLC, nor the entities or individuals that are partners or members of the corporate parents of 767 LLC, are domiciled in Minnesota.  767 LLC is the owner of the Property and lessor under a twenty-year Amended and Restated Commercial Ground Lease (the "Ground Lease") on the Property dated May 9, 2012.  A copy of the Ground Lease is attached hereto as Exhibit 2.

8.      Defendant Sherman Management LLC ("Sherman LLC") is a Delaware limited liability company that maintains a principal place of business at 302 West 47th Street, New York, New York 10036.  Neither the members of Sherman LLC, nor the entities or individuals that are partners or members of the corporate parents of Sherman LLC, are domiciled in Minnesota. Sherman LLC is the tenant and lessee under the Ground Lease and manages the Hotel.

9.      An Amended and Restated Memorandum of Lease (the "Memorandum of Lease") memorializing the Ground Lease was duly recorded against the Property with the Office of the City Register for the City of New York on August 20, 2012 at CRFN 2012000330546.  A copy of the Memorandum of Lease is attached hereto as Exhibit 3.

10.     Pursuant to Section 13 of the Ground Lease, Sherman LLC's leasehold interest in the Property is "subject and subordinate to any and all mortgages, deeds of trust and other instruments in the nature of a mortgage, now or at any time hereafter."

11.     Defendant Joginder Y. Sharma ("Sharma") is an individual who resides in Forest Hills, New York and is domiciled in New York.  Sharma is a guarantor on the Loan.

12.     Defendant New York State Department of Taxation and Finance (the "State Dept. of Taxation & Finance") is a governmental agency of the State of New York.  The State Dept. of

Taxation & Finance is named as a defendant herein because of any title, lien, tax warrant, or claim it might have against the Property as a result of any judgment it holds.  Because the State Dept. of Taxation & Finance was created and exists under the laws of the State of New York, the State Dept. of Taxation & Finance is a citizen of New York.

13.     Defendant New York City Department of Finance (the "City Dept. of Finance") is a governmental agency of the City of New York.  The City Dept. of Finance is named as a defendant herein because of any title, lien, tax warrant, or claim it might have against the Property as a result of any judgment it holds.  Because the City Dept. of Finance was created and exists under the laws of the City of New York, the City Dept. of Finance is a citizen of New York.

14.     Defendant New York City Environmental Control Board (the "City ECB") is an administrative tribunal withing the Office of Administrative Trials and Hearings that holds hearings for violations across several New York City agencies.  The City ECB is named as a defendant herein because of any title, lien, tax warrant, or claim it might have against the Property as a result of any judgment it holds, including, without limitation, those judgments identified in Exhibit 4 attached hereto.  Because the City ECB was created and exists under the laws of the City of New York, the City ECB is a citizen of New York.

15.     Each of the John Doe defendants are persons or entities whose names are unknown to Plaintiff and who have or may claim to have some interest in the Property or may be holders of judgments or other liens which affect the property or any portion thereof, which, if any, accrued subsequent to the Mortgage.  Said defendants are named as parties in this action for the sole purpose of foreclosing, extinguishing, and/or terminating any subordinate interests or liens that they may have in, to and/or upon the Property.

## JURISDICTION AND VENUE

16.     This dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  Therefore, this Court has diversity jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

17.     Pursuant to Article XVII of the Mortgage (as defined below), 767 LLC and Sherman LLC agreed, among other things, that: "the Mortgage shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located."

18.     Pursuant to Article XIII of the Note (as defined below), 767 LLC and Sherman LLC agreed, among other things, that: "[t]his Note shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located."

19.     Pursuant to Section 22(g) of the Payment Guaranty (as defined below), Sharma agreed, among other things, that:

> with respect to any claim or action arising hereunder, Guarantor (i) irrevocably submits to the nonexclusive jurisdiction of the courts of the State where the Property is located and the United States District Court located in the county in which the Property is located, and appellate courts from any thereof, and (ii) irrevocably waives any objection which it may have at any time to the laying on venue of any suit, action or proceeding arising out of or relating to this Guaranty brought in any such court, irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the Property is located within this District and a substantial portion of the events or omissions giving rise to the claims occurred withing this District.

## FACTUAL BACKGROUND

**A.    *The Consolidated, Amended and Restated Loan***

21.    On or about May 9, 2012, 767 LLC and Sherman LLC (collectively, "Borrowers") and Morgan Stanley Mortgage Capital Holdings LLC ("Morgan Stanley") agreed to consolidate, amend, and restate certain existing notes and to consolidate, amend, and restate certain existing mortgages as evidence of the outstanding total principal sum of $11,500,000 (the "***Loan***").

22.    As evidence of the Loan, Borrowers and Morgan Stanley executed a Consolidated, Amended and Restated Promissory Note in the principal amount of $11,500,000 and dated May 9, 2012 (the "***Note***").  A copy of the Note is attached hereto as Exhibit 5.

23.    Pursuant to the terms of the Note, Borrowers, *inter alia*, agreed to pay Morgan Stanley, and its successors and assigns, the principal sum of $11,500,000 plus interest through the maturity date of May 10, 2022, at which time the balance of the principal sum and all interest thereon became immediately due and payable.

24.    As collateral security on the Note, Borrowers executed and delivered to Morgan Stanley, as lender, a Consolidated, Amended and Restated Fee and Leasehold Mortgage and Security Agreement (the "***Mortgage***" together with the Note, Payment Guaranty, and all other related agreements, the "***Loan Documents***").  The Mortgage was duly recorded against the Property with the Office of the City Register for the City of New York on June 4, 2012 at CRFN 2012000216115.  A copy of the Mortgage is attached hereto as Exhibit 6.

25.    Pursuant to Section 1.1 of the Mortgage, Borrowers granted Morgan Stanley, and its successors and assigns, *inter alia*, a mortgage and security interest in the Property, all improvements on the Property, and an assignment of all rights, title, and interests in and to all current and future leases and rents.

26.     Section 1.1(e) of the Mortgage specifically grants a security interest in favor of the holder of the Mortgage in, *inter alia*,

> all machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures, [furniture, decor, appliances, keys] . . . and other customary hotel equipment) and other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, located upon [the Property], or appurtenant thereto, and usable in connection with the present or future operation and occupancy of [the Property] and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon [the Property], or appurtenant thereto, or usable in connection with the present or future operation and occupancy of [the Property]

(collectively, the "Collateral").

27.     In order to perfect its security interest in the Collateral, Borrowers delivered to Morgan Stanley a UCC-1 Financing Statement (the "UCC-1"). The UCC-1 was duly recorded against the Property with the Office of the City Register for the City of New York on May 29, 2012 at CRFN 2012000210329. A copy of the UCC-1 is attached hereto as Exhibit 7.

28.     In connection with the Loan, Borrowers and Morgan Stanley also executed an Assignment of Leases and Rents. This assignment was duly recorded against the Property with the Office of the City Register for the City of New York on June 4, 2012 at CRFN 2012000216117. A copy of this assignment is attached hereto as Exhibit 8.

29.     In connection with the Loan, Borrowers, Morgan Stanley, and Sherman LLC, as manager of the Property ("Manager"), also executed a Cash Management Agreement. A copy of the Cash Management Agreement is attached hereto as Exhibit 9.

30.     In connection with the Loan, Borrowers and Morgan Stanley also executed a Restricted Account Agreement with Wells Fargo Bank, N.A to establish a bank account (the

"Restricted Account") into which, pursuant to Section 2, "all funds, items, instruments and other things of value shall be deposited."  A copy of the Restricted Account Agreement is attached hereto as Exhibit 10.

31.    Pursuant to Section 4 of the Cash Management Agreement, Borrowers and Manager agreed that, among other things, all rents and credit card receipts would be deposited directly into the Restricted Account.

32.    In connection with the Loan, Borrowers and Morgan Stanley also executed a Reserve and Security Agreement by which Borrowers agreed, among other things, to establish certain Reserve Escrow Accounts and Reserves to fund certain specified expenses. A copy of the Reserve and Security Agreement is attached hereto as Exhibit 11.

33.    Pursuant to Section 3.1 of the Reserve and Security Agreement, Borrowers granted Morgan Stanley a security interest in all of Borrowers' rights, title, and interests in and to the relevant Reserve Escrow Accounts and Reserves.

**B.**    ***The Payment Guaranty***

34.    In order to further secure Borrowers' obligations on the Loan, on or about May 9, 2012, Sharma, as Guarantor, executed, acknowledged, and delivered to Morgan Stanley a Guaranty of Recourse Obligations of Borrower (the "***Payment Guaranty***") in favor of Morgan Stanley, and any successor lender.  A copy of the Payment Guaranty is attached hereto as Exhibit 12.

35.    Pursuant to the Payment Guaranty, Sharma agreed to absolutely and unconditionally guarantee the prompt and unconditional payment of the "Guaranteed Recourse Obligations of Borrower," defined as all of the obligations and liability of Borrowers for which Borrowers shall be personally liable pursuant to Article XI of the Note.

36.     Plaintiff has incurred Losses (as defined in the Loan Documents) on account of various breaches by Borrowers, triggering personal liability under Article XI of the Note.  Pursuant to the Payment Guaranty, Defendant Sharma is unconditionally liable for such Losses and the full amount due and owing under the Loan.

**C.**     ***Assignment and Modification of the Loan Documents***

37.     On or about July 30, 2012, Morgan Stanley executed and delivered to Plaintiff, solely in its capacity as Trustee, an Omnibus Assignment by which Morgan Stanley assigned all of its "right, title and interest in any guaranties, loan participation interests, indemnities, claims, collateral, insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action and any other collateral arising out of and/or executed and/or delivered in or to or with respect to the Loan" or the Loan Documents.  A copy of the Omnibus Assignment is attached hereto as Exhibit 13.

38.     In connection with this assignment to Plaintiff, Morgan Stanley endorsed over to and transferred the Note to Plaintiff by delivery to Plaintiff of an Allonge to the Note endorsed by Plaintiff and affixed thereto to the Note.  A copy of the Allonge is attached hereto as Exhibit 14.

39.     On or about July 30, 2012, Morgan Stanley executed and delivered to Plaintiff, solely in its capacity as Trustee, an Assignment of Mortgage by which Morgan Stanley assigned the Mortgage to Plaintiff (the "Assignment").  The Assignment was duly recorded against the Property with the Office of the City Register for the City of New York on August 20, 2012 at CRFN 2012000329986.  A copy of the Assignment is attached hereto as Exhibit 15.

40.     On or about July 30, 2012, Morgan Stanley also executed and delivered to Plaintiff, solely in its capacity as Trustee, an Assignment of Assignment of Leases and Rents.  This additional assignment was duly recorded against the Property with the Office of the City Register

for the City of New York on August 20, 2012 at CRFN 2012000329987.  A copy of the Assignment of Assignment of Leases and Rents is attached hereto as Exhibit 16.

41.     On or about July 30, 2012, Morgan Stanley executed a UCC-3 Financing Statement (the "UCC-3") evidencing the assignment of the UCC-1 to Plaintiff.  The UCC-3 was duly recorded against the Property with the Office of the City Register for the City of New York on August 20, 2012 at CRFN 2012000329988.  A copy of the UCC-3 is attached hereto as Exhibit 17.

42.     On or about December 13, 2013, Borrowers, Sharma and Plaintiff, solely in its capacity as Trustee, executed a Consent and Loan Modification Agreement (the "Consent Agreement") in connection with the sale of certain air rights.  A copy of the Consent Agreement is attached hereto as Exhibit 18.  References to the Loan Documents in this Complaint include the Consent Agreement.

43.     In connection with the Consent Agreement, Borrowers, Sharma and Plaintiff also executed a Modification of Consolidated, Amended and Restated Fee and Leasehold Mortgage and Security Instrument (the "Modification").  The Modification was duly recorded against the Property with the Office of the City Register for the City of New York on December 31, 2013 at CRFN 2013000533099.  A copy of the Modification is attached hereto as Exhibit 19.  References to the Mortgage in this Complaint include the Modification.

44.     On or about December 9, 2016, Plaintiff filed a UCC-3 Financing Statement Amendment (the "UCC-3 Continuation") to continue the effectiveness of the UCC-1 for the additional period provided by applicable law, which is 5 years.  The UCC-3 Continuation was duly recorded against the Property with the Office of the City Register for the City of New York on December 9, 2016 at CRFN 2016000435711.  A copy of the UCC-3 Continuation is attached hereto as Exhibit 20.

45.     Plaintiff, solely in its capacity as Trustee, is the current holder of the Note and the current assignee of the Mortgage, the UCC-1, and all other Loan Documents.

**D.      *Borrowers' Defaults and the Need for a Receiver***

46.     Numerous Events of Default have occurred and are continuing under the Loan Documents.  "Event of Default" is more fully defined under Section 10.1 of the Mortgage and Section 9(a) of the Cash Management Agreement.

**i.      Borrowers Failure to Make Required Payments**

47.     Pursuant to Section 10.1(a) of the Mortgage, an Event of Default occurred on April 10, 2020 when Borrowers failed to make a payment in accordance with the terms of the Loan Documents.

48.     By letter dated July 9, 2020, Rialto notified Borrowers of the existence of an Event of Default, that Default Rate interest would be charged from and after April 10, 2020 in accordance with the Loan Documents, and that Plaintiff may exercise all rights and remedies provided to it under the Loan Documents, including the acceleration of the entire principal amount.  A copy of the July 9, 2020 letter is attached hereto as Exhibit 21.

49.     By letter dated January 25, 2021, Rialto provided written notice to Borrowers that Plaintiff was accelerating the Loan pursuant to Section 11.1(a) of the Mortgage and demanding payment of the Debt in full.  A copy of the January 25, 2021 letter is attached hereto as Exhibit 22.

50.     To date, Borrowers have failed to make required payments of, among other things, interest at the Default Rate as required by the Loan Documents.

51.     As of the date of the Complaint, Borrowers have failed to satisfy their payment obligations under the Loan Documents, despite demand.  As a result, there is now due and owing to Plaintiff in excess of $11,500,000, including, without limitation, principal, accrued and per diem

note rate interest, accrued and per diem default interest late fees, Plaintiff's reasonable attorneys' fees and costs, and all other sums provided for under the Loan Documents in an amount to be determined.

**ii.** **Borrowers Fail to Comply with the Implementation Provisions of the Cash Management Agreement**

52.     Pursuant to Sections 9 and 4 of the Cash Management Agreement, an additional Event of Default occurred when the Restricted Account was closed in October 2020.

53.     Pursuant to Section 4 of the Cash Management Agreement, Borrowers and Manager must cause all Rents (as defined in the Loan Documents) to be deposited into the Restricted Account, instruct all persons with open accounts with Borrowers and Manager to deliver all payments due to the Restricted Account, and cause all credit card receipts to be deposited into the Restricted Account.

54.     To date, Borrowers have failed to comply with requests to reestablish the Restricted Account as required under the Loan Documents.

**iii.** **Borrowers and Guarantor Fail to Provide Required Reporting**

55.     Pursuant to Sections 10.1(d) and 3.12 of the Mortgage, Borrowers' and Guarantor's failure to provide Plaintiff with the required financial reporting constituted additional Events of Default.

56.     Borrowers failed to provide Plaintiff a 2021 operating budget, which was due 45 days prior to January 1, 2021.

57.     Borrowers also failed to provide Plaintiff a 2020 annual operating statement, a 2020 annual certified rent rolls—in the form of Smith Travel Research Reports ("STR Reports")—and a 2020 annual balance sheet, each of which were due 60 days after December 31, 2020.

58.     Sharma, as Guarantor, failed to provide Plaintiff a 2020 year-end profit and loss statement and balance sheet, which were due 60 days after December 31, 2020.

**iv.     Borrowers Redirect Hotel Guests to Another Hotel**

59.     Upon information and belief, Borrowers also began actively redirecting in person and online reservations and related revenue from the Hotel to another hotel, The Paul Hotel NYC, at 32 W. 29th Street, New York, New York 10001.  A notice to guests of the Hotel posted on the door of the Hotel on or about April 10, 2010 states: "Your room charges paid online if any has been transferred to The Paul Hotel reservation / Front Desk."  A copy of this notice is attached hereto as Exhibit 23.

60.     Upon information and belief, Borrowers are also rerouting phone calls made to the Hotel directly to The Paul Hotel.  The phone number for the Hotel is (212) 246-1991.  *EconoLodge Times Square*, Choice Hotels, https://www.choicehotels.com/new-york/new-york/econo-lodge-hotels/ny318?mc=llgoxxpx (last accessed June 2, 2021).

61.     Upon information and belief, The Paul Hotel NYC is operated by the affiliates and/or principals of Borrowers.

62.     These actions by Borrowers constitute an additional Event of Default under Sections 10.1(d); 4.2(b), (g), (q), (s) and 8.1 of the Mortgage.  Pursuant to Section 4.2 of the Mortgage, Borrowers agreed, *inter alia*, not to engage in any other business, comingle their assets with those of affiliates or principles, fail to hold themselves out as a separate legal entity, or hold themselves out as a department or division of another entity.  Pursuant to Section 8.1 of the Mortgage, Borrowers further agreed, *inter alia*, not to "sell, convey, mortgage, grant, bargain, encumber, pledge, assign, or otherwise transfer the Property or any part thereof or any interest therein."

63.     Borrowers' conduct also constitutes an Event of Default under Section 4 of the Cash Management Agreement.  Pursuant to Section 4 of the Cash Management Agreement, Borrowers and Manager must cause all Rents (as defined in the Loan Documents) to be deposited into the Restricted Account, instruct all persons with open accounts with Borrowers and Manager to deliver all payments due to the Restricted Account, and cause all credit card receipts to be deposited into the Restricted Account.

### v.     Other Events of Default Under the Mortgage

64.     Pursuant to Sections 10.1(c) and 3.3(a) of the Mortgage, an additional Event of Default occurred when Borrowers refused to obtain the required terrorism coverage on their commercial property insurance.  A copy of the current commercial property insurance certificate for 767 LLC, which notes that terrorism coverage was declined, is attached hereto as Exhibit 24.

65.     Pursuant to Sections 10.1(d) and 8.1 of the Mortgage, an additional Event of Default occurred when the sole member of Sherman LLC incurred additional secured debt.

66.     On or about February 24, 2015, Sherman Equities, Inc. ("Sherman Equities"), the sole member of Sherman LLC, incurred a secured loan and granted U.S. Foods, Inc. a security interest in all assets in violation of Section 8.1 of the Mortgage.  Copies of the related UCC filings are attached hereto as Exhibit 25.

67.     Pursuant to Sections 10.1(d) and 4.2(e), (v) of the Mortgage, additional Events of Default occurred when Borrowers 767 LLC and Sherman LLC each failed to comply with all Delaware corporate formalities and pay all required fees or taxes in a timely manner.

### vi.     Plaintiff Provides Notice of Additional Events of Default

68.     By letter dated April 29, 2021, Rialto provided written notice to Borrowers of additional Events of Default under the Loan Documents and that until all Events of Default were

14

fully cured, interest would continue to accrue at the Default Rate.  A copy of the April 29, 2021

letter is attached hereto as Exhibit 26.

E.    *Plaintiff's Remedies Under the Mortgage*

69.    Pursuant to the express terms of Section 11.1 of the Mortgage, Borrowers have

consented to the appointment of a receiver following an Event of Default.

70.    Section 11.1 of the Mortgage provides:

> Upon the occurrence of any Event of Default, Borrower agrees that
> Lender may take such action, without notice or demand, as it deems
> advisable to protect and enforce its rights against Borrower and in
> and to the Property, including, but not limited to, the following
> actions, each of which may be pursued concurrently or otherwise, at
> such time and in such order as Lender may determine, in its sole
> discretion, without impairing or otherwise affecting the other rights
> and remedies of Lender:
>
> . . .
>
>        (b) institute proceedings, judicial or otherwise, for the
> complete foreclosure of this Security Instrument under any
> applicable provision of law in which case the Property or any
> interest therein may be sold for cash or upon credit in one or more
> parcels or in several interests or portions and in any order or manner;
>
> . . .
>
>        (g) apply for the appointment of a receiver, trustee,
> liquidator or conservator of the Property, without notice and without
> regard for the adequacy of the security for the Debt and without
> regard for the solvency of Borrower, any Guarantor, Indemnitor or
> of any Person liable for the payment of the Debt;

71.    The Property is the sole asset of 767 LLC.

72.    The leasehold interest in the Property under the Ground Lease is the sole asset of

Sherman LLC.

73.    Pursuant to Section 1 and Section 4 of the Payment Guaranty, Sharma agreed to make prompt payment of all obligations and liabilities of Borrowers for which Borrowers shall be personally liable.

74.    Pursuant to Article XI(c) of the Note, Borrowers shall be personally liable under the Note and the Debt shall be fully recourse to Borrowers when, among other things:

> (ii) Borrower fails to comply with any provision of Sections 4.2 and/or 4.3 of the Security Instrument;
>
> (iii) an Event of Default occurs under Article VIII of the Security Instrument;
>
> (iv) Borrower fails to comply with that certain Cash Management Agreement of even date herewith made by and among Borrower, Lender and Sherman Management LLC;

75.    Each of the conditions described in Article XI(c)(ii) – (iv) have occurred.

76.    The Hotel has now been shut down and is in danger of losing its franchise agreement with Choice Hotels.

77.    The Borrowers are actively diverting revenue that has or could have been generated by the Hotel to another hotel owned or operated by Borrowers, their affiliates, or their principals.

78.    There is manifest danger of loss, deterioration, and diminution of the Hotel and the Property that are the primary sources for the repayment of the Loan, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrowers.

79.    Plaintiff is contractually and equitably entitled to the appointment immediately of a receiver to take possession of the Hotel and hold, subject to the discretion of this Court, the Hotel and Borrowers' assets.

80.     Plaintiff is further contractually and equitably entitled to recover reasonable attorneys' fees and costs pursuant to Sections 11.3, 13.1(c), 13.3 and 19.2 of the Mortgage, Article XVIII(a) of the Note, Section 6 of the Payment Guaranty, Section 10 of the Cash Management Agreement, and other Loan Documents.

81.     In order to protect the lien and security represented by the Mortgage during the pendency of this foreclosure action, Plaintiff, or an appointed receiver, may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs, and other expenses or charges affecting the Property.  Plaintiff asks that any amount so paid and expended by it or the receiver during the pendency of this foreclosure action be added, pursuant to the Mortgage and the Loan Documents, to its claim and be repaid to Plaintiff from the proceeds of the sale of the Property, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Mortgages and the Loan Documents.

82.     Defendants named herein are obligated to pay the Mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the Property, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the liens of the Mortgage.

83.     No other action has been brought to recover any part of the debt under the Mortgage, Note, or other Loan Documents.

### COUNT I
### (Foreclosure of Mortgage)

84.     Plaintiff realleges and incorporated by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 83 of this Complaint.

85.     Under Section 11.1 of the Mortgage, Plaintiff has the right to institute a proceeding to foreclose the Mortgage upon any Event of Default.

86.     An Event of Default occurred when Borrowers failed to make payments to Plaintiff in accordance with the terms of the Loan Document in breach of their obligations under Section 10.1(a) of the Mortgage, the Note, and other Loan Documents.

87.     A further Event of Default occurred when Borrowers began diverting income from the Hotel.  Such actions constitute a breach of Sections 4.2(b), (g), (q), (s); 8.1; and 10.1(d) of the Mortgage and Sections 4 and 9(a) of the Cash Management Agreement.

88.     Further Events of Default occurred when Borrowers failed to provide all required financial reporting to Plaintiff in breach of their obligations under Sections 13.12 and 10.1(d) of the Mortgage.

89.     Further Events of Default occurred when Borrowers failed to comply with all Delaware corporate formalities in breach of their obligations under Sections 4.2(e), (v) and 10.1(d) of the Mortgage.

90.     A further Event of Default occurred when the sole member of Sherman LLC incurred secured debt in breach of Sections 8.1 and 10.1(d) of the Mortgage.

91.     A further Event of Default occurred when Borrowers failed to maintain the required terrorism insurance coverage in breach of their obligation under Sections 3.3(a) and 10.1(c) of the Mortgage.

92.     Each of these Events of Default occurred under the Loan Documents and Plaintiff is therefore entitled to foreclosure of the Mortgage.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff for foreclosure of the Property as follows:

A.      Finding that Plaintiff has a first and most senior lien on the Property;

B.      Ordering that Plaintiff has the legal right and is authorized to foreclose on the Property:

       (i)      in one parcel according to law together with the fixtures and articles of personalty upon the premises;

      (ii)      subject to zoning restrictions and ordinances adopted by any municipality or other governmental authority, and violations thereof;

      (iii)      subject to any state of facts that an accurate survey would show;

      (iv)      subject to covenants and restrictions of record, if any; and

      (v)      subject to violations, if any, noted by any federal, state, city, town, or village agency having authority over the premises;

C.      Finding that such foreclosure will vest in the purchaser thereat free and clear title to the Property, free of any and all interests that are or might be asserted by the Defendants to this Complaint;

D.      Ordering that Plaintiff has the right to credit bid at such foreclosure sale any and all amounts due to Plaintiff under the Note;

E.      Ordering and directing that the Sheriff of New York County, New York, or any referee appointed in this action, foreclose the Property and deliver title via a Sheriff's Deed or Referee's Deed, and bill of sale, as appropriate, to the successful bidder at such foreclosure sale;

F.      Ordering and directing that the proceeds of the sale be applied as follows:

      (i)      to payment of the expenses of the sale;

      (ii)      to the payment of the debt owed to Plaintiff under the Note;

(iii)      to the payment of foreclosure costs and other accrued costs in connection with the foreclosure;

(iv)      to the payment, at Plaintiff's option, of any real property taxes that may be due and unpaid in connection with the Property;

(v)      to the payment, at Plaintiff's option, of all other assessments against or attributable to the Property; and

(vi)      the surplus, if any, to the payment of debts secured by junior liens on the Property and then, to Borrower, in accordance with further order of the Court;

G.      Ordering that Borrowers have no right of redemption or reinstatement with respect to the Property;

H.      Finding that Plaintiff has preserved its right to pursue any deficiency that may exist under the Note and other Loan Documents after application of the proceeds of the foreclosure sale pursuant to N.Y. Real Prop. Acts. Law §1371 and may move the Court to enter final judgment against Borrowers for such deficiency;

I.      Awarding Plaintiff its costs of suit and attorneys' fees; and

J.      Ordering all further relief is just, proper, and equitable.

## COUNT II
### (Security Interest Foreclosure)

93.      Plaintiff realleges and incorporated by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 92 of this Complaint.

94.      When Borrowers executed the Mortgage, they granted Morgan Stanley, and its successors and assigns, valid and enforceable security interests in the Collateral located at or on the Property.

95. To perfect its interest in the Collateral, Borrowers delivered the UCC-1 to Morgan Stanley, which was duly recorded on June 4, 2012.

96. Morgan Stanley delivered to Plaintiff the UCC-3, pursuant to which Morgan Stanley transferred all rights, title, and interest in and to the UCC-1, which was duly recorded on August 20, 2012.

97. Plaintiff duly recorded the UCC-3 Continuation on December 9, 2016.

98. Plaintiff therefore holds a duly perfected security interest in the collateral by virtue of the Mortgage, the UCC-1, the UCC-3, and the UCC-3 Continuation.

99. Pursuant to Sections 11.1(d) and (i) of the Mortgage, Plaintiff may elect to have the Collateral located on the Property sold together with the Property at a single public sale.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff as follows:

A. Adjudging that the Collateral be sold together with the Property at a single public sale to satisfy the amounts due to Plaintiff;

B. Barring and foreclosing defendants of all equity of redemption in and to the collateral located at the Property;

C. Awarding Plaintiff its costs of suit and attorneys' fees; and

D. Ordering all further relief that is just, proper, and equitable.

### COUNT III
### (Possession)

100. Plaintiff realleges and incorporated by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 99 of this Complaint.

101.    By reason of Borrowers' defaults under the Loan Documents, Plaintiff is entitled to possession of the Property and the Collateral located at the Property pursuant to Sections 11.1(h) and (i) of the Mortgage.

102.    Borrowers are currently in possession of the Property and have deprived, and continue to deprive, Plaintiff of possession of the Property and the Collateral locate at the Property.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff as follows:

A.      Granting Plaintiff, its assignee, or the purchaser of the Property at the foreclosure sale, possession of the Property and the Collateral located at the Property.

B.      Awarding Plaintiff damages for mesne profits;

C.      Awarding Plaintiff its costs of suit and attorneys' fees;

D.      Ordering all further relief that is just, proper, and equitable.

**COUNT IV**
**(Appointment of a Receiver)**

103.    Plaintiff realleges and incorporated by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 102 of this Complaint.

104.    The Property is the sole asset of 767 LLC.

105.    The leasehold interest in the Property is the sole asset of Sherman LLC.

106.    Except for certain limited qualifications as set forth in the Loan Documents, Borrowers have no personal liability for repayment of the Loan, and Plaintiff's sole recourse for repayment of the Loan is the Collateral securing the Loan, including the Property.

107.    Borrowers have failed to maintain and prevent waste at the Property and have failed to pay all amounts due and owing under the Loan Documents, which constitute Events of Default under the Loan Documents.

108.     The Loan Documents expressly allow Plaintiff to seek the appointment of a receiver upon the occurrence of an Event of Default.

109.     Borrowers and their agents are still in possession of the Property.

110.     The Hotel at the Property is currently closed and is in danger of losing its franchise flag with Choice Hotels.

111.     Plaintiff, as an interested secured party, is threatened with material losses and injuries, including the Hotel continuing waste and dissipation or diminution in value, if Borrowers remains in control of the Hotel.

112.     Therefore, in accordance with Section 11.1(g) of the Mortgage and/or Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Hotel and related assets, books, and records in Borrower's possession.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff as follows:

A.     Appointing a receiver over the Property and Borrowers' assets;

B.     Directing all tenants in possession of the Property to pay the appointed receiver all rent, income and profits;

C.     Awarding Plaintiff its costs of suit and attorneys' fees; and

D.     Ordering all further relief that is just, proper, and equitable.

## COUNT V
### (Breach of Payment Guaranty)

113.     Plaintiff realleges and incorporated by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 112 of this Complaint.

114.    In order to induce Morgan Stanley to make the Loan to Borrowers, Sharma, as Guarantor, duly executed, acknowledged and delivered the Payment Guaranty as an additional security for the repayment of all sums due and the performance of all obligations under the loan documents.

115.    Pursuant to the Payment Guaranty, Guarantor agreed to absolutely and unconditionally guarantee the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower, defined as all of the obligations and liability of Borrowers for which Borrowers shall be personally liable pursuant to Article XI of the Note.

116.    Pursuant to Section 6 of the Payment Guarantee, Guarantor agreed that, with or without notice or demand, Guarantor will reimburse Plaintiff, to the extent that such reimbursement is not made by Borrower, for all actual expenses (including reasonable attorneys' fees and any fees of a special servicer) incurred by Plaintiff in connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion thereof or with the enforcement of this Guaranty.

117.    Lender has incurred and continues to incur Losses for which Borrowers are personally liable under Article XI of the Note.

118.    Pursuant to the Payment Guaranty, Defendant Sharma is absolutely and unconditionally liable for all such Losses and the full amount of the Loan.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff as follows:

A.    Fixing the amount due to Plaintiff from Guarantor pursuant to the Guaranty and any other applicable Loan Documents;

B.    Adjudging that Plaintiff is entitled to be paid by Guarantors the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs; and

24

C.       Ordering all further relief that is just, proper, and equitable.

**COUNT VI**
**(Attorneys' Fees and Costs)**

119.     Plaintiff realleges and incorporated by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 118 of this Complaint.

120.     Pursuant to Sections 11.3, 13.1(c), 13.3 and 19.2 of the Mortgage, Article XVIII(a) of the Note, and Section 10 of the Cash Management Agreement, Borrowers are liable to Plaintiff for all costs and expenses incurred by Plaintiff in foreclosing on the Property, including without limitation, attorneys' fees, costs, and legal expenses.

121.     In addition, Guarantor is liable to Plaintiff under Section 6 of the Payment Guaranty for all costs and expenses incurred by Plaintiff in connection with the collection of the Guaranteed Recourse Obligations of Borrower and in enforcing the Payment Guaranty.

122.     Based upon the foregoing, Borrowers and Guarantor are liable to Plaintiff for all costs and expenses incurred in connection with this Complaint.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff as follows:

A.       Awarding Plaintiff any and all attorneys' fees, costs, and expenses, both to date and hereafter, in connection with the collection of the amounts due under the Loan Documents and prosecuting this action; and

B.       Ordering all further relief that is just, proper, and equitable.

Dated:    New York, New York
            June 2, 2021

**ALSTON & BIRD LLP**

By: */s/ John P. Doherty*
    John P. Doherty, Esq.
    William Hao, Esq.
    90 Park Ave
    New York, New York 10016-1387
    (212) 210-9400
    john.doherty@alston.com
    william.hao@alston.com

*Attorneys for Plaintiff U.S. Bank National Association solely in its capacity as Trustee, acting by and through Rialto Capital Advisors, LLC, solely in its capacity as special servicer*