**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, solely in its capacity as Trustee for the registered holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2012-C5, acting by and through Rialto Capital Advisors, LLC as Special Servicer, | Case No. _____ |

Plaintiff,

v.

767 8TH AVE LLC, SHERMAN MANAGEMENT LLC, JOGINDER Y. SHARMA, NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE, NEW YORK CITY DEPARTMENT OF FINANCE, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, & JOHN DOES 1 THROUGH 10,

Defendants.

---

## [PROPOSED] ORDER APPOINTING RECEIVER

THIS MATTER is before the Court on Plaintiff's Application for the Appointment of a Receiver brought by Order to Show Cause dated June 2, 2021, Plaintiff's Memorandum of Law in Support, the June 2, 2021 Declaration of Nicholas Powell, the June 2, 2021 Declaration of Jeffrey Kolessar, and the June 2, 2021 Declaration of John P. Doherty (collectively, the "Application"), as well as the Complaint filed on June 2, 2021 (the "Complaint"). Upon review of the Application and the Complaint, and for good cause shown, the Court FINDS as follows:

1.      That jurisdiction is proper under 28 U.S.C. § 1332; that Defendants 767 8th Ave LLC ("767 LLC") and Sherman Management LLC ("Sherman LLC", collectively, the "Borrowers") were duly served with a copy of the Application, that Borrowers are in default of

their obligations under the Loan (as defined herein) due to, among other things, a failure to make required monthly payments as they come due; and

2.      That the Complaint and Application demonstrate grounds for the appointment of a receiver of Borrowers' Assets (as defined herein) and that immediate and irreparable injury may result in the event a receiver is not appointed.

Based on the foregoing FINDINGS, the Court therefore grants the relief requested in the Application.

IT IS HEREBY ORDERED that Jeffrey Kolessar of GF Hotels & Resorts, with a business address at 1628 JFK Boulevard, 23rd Floor, Philadelphia, Pennsylvania 19103 (the "Receiver"), be and hereby is appointed as the receiver of Borrowers' Assets, specifically including, but not limited to, the Property (as defined herein) and more particularly described in the Complaint.

IT IS FURTHER ORDERED that:

1.      Upon the Effective Date (as further defined herein), the Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of the Borrowers (collectively, "Borrowers' Assets"):

a.      Certain real property at 767 8th Avenue/302 West 47th Street, New York, New York 10036 (the "Property") improved by, among other things, a hotel known as "EconoLodge Times Square" (the "Hotel").  The Property is more particularly described in the Mortgage.  All references to the Property are inclusive of the Hotel;

b.      All documents, ledgers, journals, reports, instruments, agreements, security and access codes, combinations, merchant credit card machines and access numbers to them, the current lists of Tenants (if any), Tenant ledgers, Tenant files, Tenant histories, records pertaining to occupancy (including, without limitation, all guest/occupant ledgers,

reservation reports, credit card billings, occupancy tax records, and all property tax or occupancy tax identification numbers), cash receipts journals, guest/transient bookings, banquet/facility bookings, reservation systems and access codes to them, websites and access codes to them, information and materials belonging to any of the respective Borrowers, whether in Borrowers' or their agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, tax appeal, marketing, financing, use, operation, preservation and protection of the Property and the other Borrowers' Assets, and all other Personal Property (as defined in the Mortgage) (collectively, the "Project Records");

     c.    Subject to paragraph 12 below, all rights and obligations of Borrowers under that certain Franchise Agreement (as such term is defined in the Mortgage); that certain Technology Services Agreement and Software License dated as of November 10, 2005 by and among Choice Hotels (as hereinafter defined), Sherman Equities Corporation, a New York corporation, John Sharma, an individual, and Shashi Sharma, an individual; and that certain Tri-Party Agreement dated as of May 4, 2012 by and among Choice Hotels, Sherman LLC, and Morgan Stanley Mortgage Capital Holdings LLC (collectively, the "Franchise Agreement").

     d.    All cash, letters of credit, checking, savings, depository, payroll, vendor, petty cash or other accounts relating to the Property and held by or for the benefit of Borrowers;

     e.    All payments, revenues, refunds and other income from, relating to or derived from the Property (collectively, the "Project Income");

      f.     All security, utility, prepayments, and other deposits received by Borrowers and/or their respective agents (acting as agents of Borrowers) and any deposits made by any Borrowers to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Property (collectively the "Project Deposits");

      g.     All information systems and technology of any kind, including access thereto, that Borrowers or their respective agents maintain or utilize for the benefit of Borrowers or relating to the Property (collectively, the "Information Technology"); and

      h.     The originals of all leases, subleases, licenses (including, without limitation, all liquor licenses), franchise agreements, vehicle titles and any other agreements in possession or control of Borrowers or their agents (acting as agents of Borrowers) relating to the use or occupancy of the Property (collectively, the "Leases").

2.     Receiver is hereby empowered to continue the management, operation, and maintenance of the Property as set forth herein and shall exercise all powers necessary to facilitate the operation of the Property.

3.     Receiver is hereby authorized to, but need not, delegate some or all of its authority under this Order to (and to engage and compensate) one or more property management firms, subject to Plaintiff's approval.  The Receiver may retain the services of TSNY Associates LLC ("Receiver's Property Manager") to manage and operate the Property, subject to replacement by Receiver consistent with this Order.  The Receiver's Property Manager is authorized to act on behalf of the Receiver as the Receiver's authorized representative, with the full force and power of the Receiver to carry out the duties and obligations of the Receiver as set forth herein, including without limitation obtaining turnover, possession and control of the Property, Borrowers' Assets,

and Project Documents (as defined herein)  in accordance with the provisions of this Order. Receiver shall have the right to pay Receiver's Property Manager in accordance with the fee schedule attached hereto as <u>Exhibit 3</u>.  Receiver shall have the right to terminate the engagement of any current property management firms of Borrowers without liability.  Receiver shall be empowered to enforce any rights and remedies against any such property management firms, at law or in equity, either in its own name or as though the Receiver were standing in the place of Borrowers.

4.      Borrowers, their respective agents (acting as agents of Borrowers), and all, employees, members, managers, officers and representatives, any parties managing any portion of the Property and any and all other contractors, persons and entities retained, hired or engaged by are hereby ordered (a) to immediately surrender possession and control of the Property to the Receiver; and (b) to immediately surrender possession and control of all other Borrowers' Assets in their possession or control, specifically including, without limitation, (i) all Project Records, (ii) all Project Documents; (iii) all Project Accounts, (iv) all Project Deposits, (v) all Project Income, (vi) all Information Technology (vii) the originals of all Leases; (viii) the originals of the Franchise Agreement (ix) the originals of all other contracts and agreements relating the Property, (x) the originals of all liquor licenses relating to the Property and (xi) all other Property, to the Receiver.  The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Borrowers' Assets, including the Property, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts.  All such documents shall be submitted to the Receiver within five (5) business days of the date of this Order.  Subject to paragraph 5 of this Order, any future income

related to the Property shall be turned over to the Receiver immediately upon receipt. The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Borrowers' Assets, including, without limitation, the Property, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts (as defined herein).

5.      Receiver is hereby authorized to, and is authorized to delegate the power to Receiver's Property Manager to, establish in the name of the Receiver one or more operating bank accounts to receive and hold funds in trust pursuant to this Order ("Project Accounts"). Receiver may use the funds from the Project Accounts pursuant to this Order, which funds shall then be applied as required by paragraph 15, or as directed by the Court.

6.      Subject to paragraph 15 of this Order, all funds in any account maintained by the Receiver pursuant to this Order shall remain collateral for the Loan pursuant to the Loan Documents and shall be paid to Plaintiff upon the earliest to occur of (i) the consummation of the judicial foreclosure and sale of all of the Property; (ii) payment of the Loan in full, provided such funds remain due and owing to Plaintiff; (iii) a final judgment of this Court is entered terminating the receivership created by this Order; (iv) the consummation of a sale or sales of all of the Property pursuant to further order of this Court; (v) the written request of Plaintiff that is so-ordered by this Court; (vi) the written request of the Receiver (made with written consent from Plaintiff) that is so-ordered by this Court; or (viii) further order of this Court; provided, however, that in any event, Receiver shall be entitled to withhold sufficient funds to pay final bills and expenses.

7.      The Receiver and Receiver's Property Manager are authorized to serve this Order on any of the financial institutions that maintain any Project Accounts, and all such financial

institutions and any other persons in active concert or participation with Borrowers are authorized to take such steps as are necessary to restrain or prevent Borrowers and/or their respective agents (acting as agents of Borrowers) from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits in any Project Accounts and are authorized to immediately turn over all funds in any Project Accounts to the Receiver or Receiver's Property Manager.  Any financial institution maintaining Project Accounts is authorized to provide to the Receiver and Receiver's Property Manager a complete listing of account numbers under the name of Borrowers or their agents, including accounts previously closed.  For each such Project Account the financial institution is authorized to provide the current balance for such account and upon request by the Receiver or Receiver's Property Manager is authorized to provide monthly bank statements (and details of any such transactions as requested) for a period of up to one (1) year prior to entry of this Order.

8.      Borrowers, Sherman LLC (in its capacity as property manager), and any other agents of Borrowers (acting as agents of Borrowers) charged with operating and/or managing the Property are hereby directed to deliver to the Receiver and Plaintiff within five (5) days after the date of this Order:

a.      an accounting of all Project Income, all Project Expenses, whether paid with Project Income or by Borrowers for the benefit of the Property, all Project Accounts and all Project Deposits for the period beginning from and after January 1, 2020, to the date of this Order;

b.      monthly operating statements for each calendar month for the months of January 2020 through and including the present month, and year-to-date operating statements, each of which shall include an itemization of actual (not pro forma) capital

expenditures during the applicable period and each of which shall also be certified true and correct by Borrowers and/or their respective agents (acting as agents of Borrowers) charged with operating the Property;

c.      all Project Income generated by the Property from and after January 1, 2020, to the date of this Order which was not applied to the standard and customary operating expenses of the Property or delivered to the Plaintiff;

d.      all sales tax identification numbers, log-ins and copies of filed returns from and after January 1, 2020; and

e.      an itemization of all unpaid bills, a list of any and all liens, mechanics liens, or similar, filed against any of the Property, and any other amounts due and payable relating to the Property, together with all bills, invoices and other writings evidencing or relating thereto, which unpaid bills and other amounts due shall remain the sole obligation and responsibility of Borrowers and/or Borrowers' agents.

The Receiver shall not be responsible for payment of any expenses (including, without limitation, for services, build-outs, or any other construction), invoices for services, utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone), taxes, and unpaid payroll expenses incurred by, or for the benefit of, the Property prior to the Receiver's taking possession of the Property.  Borrowers shall request that all utilities companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone not discontinue any services being provided to the Property.  Each utility company or entity providing service to the Property is authorized to forthwith transfer any deposits which it holds in connection with the Property to the exclusive control of Receiver.  The Receiver is authorized to open new customer accounts with each utility that provides services to

the Property, or require Borrowers to name Receiver as an authorized user of any of the existing utility accounts for the Property.  Each utility company is barred from interrupting service due to pre-receivership liabilities.

9.      The Receiver is authorized and directed to demand, collect and receive from the Property all amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder.  Anyone who owes such amounts is authorized to pay them to the Receiver.

10.     The Receiver is hereby authorized and directed to make, enforce, or modify contracts, Leases, or licenses as they relate to the Property (as stated in paragraph 28).  The Receiver is further authorized to cancel or terminate any existing contract, agreement or instrument which is not, in the Receiver's discretion, deemed commercially reasonable or beneficial to the operation of the Property, with no further obligation or liability, including the liability to pay any termination fee under such terminated contract.  No required consent of Plaintiff, nor any other provision of this Order shall render or cause, or shall be deemed to render or cause, Plaintiff to be a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.  The Receiver shall operate and manage the Property in a reasonable manner in accordance with all contractual obligations, including, without limitation, the Applicable Franchise Agreement (all as the same may be canceled or modified as provided herein) and otherwise in accordance with applicable state, local, and federal laws.

11.     Receiver or Receiver's Property Manager may offer employment to existing employees working at the Property of Borrowers or related parties (including any management companies engaged by Borrowers) to continue any business operations, or in the alternative hire all employees as those of any management company or other entity hired by Receiver.  Borrowers or any management companies engaged by Borrowers (as appropriate) will be solely and

exclusively responsible for (i) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Borrowers or any management companies engaged by Borrowers, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (ii) liabilities existing prior to Receiver's appointment related to the Worker Adjustment and Restraining Notification Act (WARN), 29 U.S.C. § 2101, *et seq.*, and liabilities existing prior to Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state statutes or regulations.  All pre-receivership liabilities for which Borrowers and/or any management companies engaged by Borrowers bear responsibility will not be carried and reported as those of the receivership estate.

12.     With respect to the Hotel, the Receiver has the right, at Plaintiff's direction, to either continue to have the Hotel operated pursuant to the Franchise Agreement or to enter into a form franchise agreement ("New Franchise Agreement"; together with the Franchise Agreement, individually and/or collectively as the context may require, the "Applicable Franchise Agreement") with Choice Hotels International Inc., a Delaware corporation ("Choice Hotels") in form and substance satisfactory to the Receiver, Plaintiff, and Choice Hotels, and to have the Hotel operated in accordance with the terms of the Applicable Franchise Agreement by a third-party management company approved by Choice Hotels in accordance with the terms thereof (if such approval is required under such Applicable Franchise Agreement).  The obligations of the Receiver shall be to insure that the Hotel is operated in accordance with state, local and federal laws, and maintained in accordance with the standards required by the Applicable Franchise Agreement, and that both past due payments and those that come due under the Applicable Franchise Agreement during the receivership may be promptly paid to Choice Hotels as on-going

operating expense ahead of those payments due to the Receiver and Plaintiff.  In the event there are insufficient funds from the operation of the Hotel to pay all amounts due to Choice Hotels or its affiliates under the Applicable Franchise Agreement (or related thereto), Plaintiff may, in its sole discretion, fund such amounts due to Choice Hotels as a protective advance under the Loan. The Receiver shall have the right to expend and disburse funds for payment to Choice Hotels for amounts due from time to time under the Applicable Franchise Agreement pursuant to the terms of this Order.  The Receiver shall have the option to cure any existing defaults under the Applicable Franchise Agreement, but shall not have the obligation to do so.  Nor shall the Receiver be obligated to pay termination fees or liquidated damages under the Applicable Franchise Agreement.

13.     The Receiver is hereby authorized and directed to lease, rent and license the Property (including, without limitation, reservations for transient occupancy of the Property by Hotel guests and any agreements relating thereto) on such terms and conditions as may be approved in writing by Plaintiff.

14.     The Receiver and Receiver's Property Manager are authorized and directed (a) to deposit or cause to be deposited all Project Income and all other funds and monies received by it pursuant to this Order into the Project Accounts in accordance with paragraph 5 above; and (b) to make available by electronic means or by means as otherwise determined by the Receiver and as allowed under this Order copies of the monthly bank statements relating to such accounts for the parties' review and inspection.

15.     Subject to anything set forth in the Loan Documents to the contrary, and subject to the provisions of paragraph 12 above, the Receiver is authorized and directed to use the Project

Income and all other funds and monies coming into the Receiver's hands pursuant to this Order as follows:

   a.  first, to the payment of ground lease rents, real estate taxes and insurance premiums for the Property;

   b.  second, to payment of the Receiver's and Receiver's Property Manager's fees as set forth in Exhibit 3 attached hereto and incorporated herein;

   c.  third, to the payment of all currently payable Hotel employee payroll expenses;

   d.  fourth, to the reasonable out-of-pocket third-party costs and expenses incurred by the Receiver in the ordinary course of the performance of the Receiver's duties in accordance with this Order;

   e.  fifth, to the payment of all monthly Project Expenses, other than those paid pursuant to paragraph 15(a) and 15(c) above, arising, in each case, from and after the date of this Order and being reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect Borrowers' Assets in accordance with this Order, provided, however, that except in the instance of an emergency, the Receiver shall not expend in excess of $25,000.00 for any single repair, replacement or capital improvement without the prior written approval of Plaintiff, and provided further, however, that the Receiver may, only upon the prior written approval of Plaintiff, use Project Income to pay Project Expenses arising prior to the date of this Order; and

   f.  last, on or before the twentieth (20th) day of each calendar month after the date of this Order, all remaining Project Income, funds and monies (collectively, "Excess Funds") to Plaintiff for application against the outstanding advances, expenses, costs,

interest, principal, fees and other amounts owed by Borrowers under the Loan Documents, with such Excess Funds to be applied by Plaintiff in such order and manner in Plaintiff's sole discretion; provided, however, that Receiver may withhold a sufficient working capital in an amount agreed upon between Receiver and Plaintiff.

16.     If the Receiver (i) determines at any time, and from time to time, that the amount of Project Income then in the possession of the Receiver, or which the Receiver anticipates will be in the possession of the Receiver when required, is insufficient to pay any expenses described in paragraphs 15(a) through 15(e) of this Order, or (ii) receives bills for Project Expenses pertaining to periods that precede the date of this Order, then the Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit or such bills, whereupon Plaintiff shall have the right, but not the obligation, to (a) release additional funds from the Project Accounts to satisfy such deficit, or (b) if there are insufficient funds in Project Accounts to satisfy such deficit, advance to the Receiver funds to pay all or any portion of such deficit or permit Receiver to pay such bills. Any funds advanced by Plaintiff pursuant to this paragraph (i) shall be repaid as an expense of the Receiver if advanced directly by the Receiver in accordance with paragraph 15(b) of this Order, and (ii) to the extent advanced by Plaintiff, shall be deemed an advance to Borrowers under the Loan Documents for the protection and preservation of the Property and the other Borrowers' Assets, shall be added to the outstanding principal amount of the Loan and shall be secured by the mortgage, security title, security interest, lien and/or encumbrance of the Mortgage and the Loan Documents, and no such amount advanced by Plaintiff shall render or shall be deemed to render Plaintiff a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability to Borrowers under the Loan Documents or otherwise.

17.     The Receiver is authorized to engage counsel, institute, carry on and maintain all actions, suits, proceedings and procedures necessary (a) for the proper management, operation, preservation and protection of the Property and the other Borrowers' Assets or to gain or recover possession of all or any part thereof; (b) for collection of any Project Income now due or hereafter to become due or fixed; and (c) for the removal of any person unlawfully possessing, occupying or using any part of the Property.

18.     The Receiver and Receiver's Property Manager are authorized to, in accordance with and subject to applicable law, (a) continue to utilize and operate under any and all licenses, permits or other government issued documents necessary for the continued operation of the Property, whether or not in the name of Borrowers, and/or (b) transfer such licenses, permits or other government issued documents into the name of Receiver or Receiver's Property Manager. This shall include, if applicable, liquor licenses or permits attributable to the Property whether or not in the name of the Borrowers.  Borrowers and/or their affiliates' shall cooperate in the transfer of the liquor licenses, shall execute and deliver such documentation and certificates as are necessary or required for the continuation to operate, renewal and/or transfer the liquor licenses, and shall not engage in any acts whatsoever that would interfere with the operation or transfer thereof.

19.     The Receiver is authorized to use the tax identification numbers of Borrowers with respect to the Property for any lawful purpose. The Receiver shall have no obligation to prepare or file state or federal tax returns on behalf of Borrowers and shall not be responsible for paying any unpaid federal or state taxes on behalf of Borrowers.

20.     On or before the thirtieth (30th) day of each calendar month, the Receiver shall provide by electronic means or by means otherwise determined by the Receiver and as allowed

under this Order monthly financial reports for the immediately preceding month to Plaintiff and Borrowers concerning the operations, income and expenses of the Property.

21.     Upon request by Plaintiff, the Receiver is authorized to (a) order appraisals for the Property; (b) list or otherwise advertise all or a portion of the Property for sale with a brokerage firm approved by Plaintiff on terms and conditions approved by Plaintiff; (c) solicit offers to purchase all or a portion of the Property and (d) provide promptly to Plaintiff and Borrowers copies of all such offers.  Plaintiff shall be permitted, from time to time, to contact such brokerage firm and any party or parties which may have an interest in purchasing the Property or which have made any proposal to purchase the Property and to discuss and negotiate the terms of such offer provided that Plaintiff shall report the nature and content of such discussions and negotiations to the Receiver periodically, and no such contact, discussion or negotiation with such party or parties shall render or cause or shall be deemed to render or cause Plaintiff to be a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.  Upon request by Plaintiff, the Receiver shall, or Plaintiff itself may, file a motion (and seek a hearing on an expedited or emergency basis on such motion) for permission to sell the Property.  Any response or opposition to such motion must be filed within ten (10) days after the motion is filed. Plaintiff and Borrowers agree that the Court may rule on the motion and supporting documents without conducting a hearing. If the Court determines that appropriate circumstances exist for selling all or a portion of the Property, the Court may enter an order authorizing and directing the Receiver to sell the Property and Borrowers' Assets on the terms set forth in the Court's order, or as are acceptable and approved in writing prior to such sale by Plaintiff if there is no opposition to the motion.  The Property and Borrowers' Assets may be sold by way of public or private sale or other disposition free and clear of all security interests, liens, claims and other

interests, all valid security interests, liens, claims, and other interests, if any, shall attach to the proceeds of such sale(s). The Receiver shall be authorized to execute any documentation on behalf of the applicable Defendant as its attorney-in-fact to effectuate such sale(s).

22.     In connection with any sale of the Property by the Receiver in accordance with this Order, Plaintiff shall have the right, but not the obligation, in its sole discretion, to permit a purchaser of the Property to assume the Loan and to make any modifications to the Loan to which Plaintiff agrees in writing (including, without limitation, the extension of the Loan maturity date, a change in the interest rate, a reduction of the outstanding principal balance of the Loan and changes to the reserves and escrows for the Loan).  The Receiver is hereby authorized and directed to execute any documentation on behalf of Defendant as its attorney-in-fact to effectuate such assumption and modification of the Loan, so long as such modifications do not increase the indebtedness and other amounts owed by Borrowers under the Loan Documents.  In the event of a note sale or assumption of the Loan by a party unaffiliated with Plaintiff, then the Receiver may withdraw as Receiver upon twenty (20) days notice to the Parties and the Court.

23.     The Receiver is authorized to engage and compensate any assistants, professionals, independent contracts, accountants, and attorneys, as needed in the reasonable discretion of the Receiver, to advise the Receiver with regard to financial and legal matters relating to Borrowers' Assets, to prepare financial statements and reports required under this Order, to initiate, carry on and maintain such actions, suits and proceedings for and on behalf of the Receiver and as may be necessary for the Receiver to carry out its duties and responsibilities under this Order and as otherwise may be reasonably required by the Receiver.  However, Receiver's employment of any attorneys in addition to AHP Law Group LLC and Thompson and Knight LLP are subject to

Plaintiff's approval.  Upon the approval of Plaintiff of the reasonable fees and expenses of such attorneys, the Receiver shall be authorized to pay such fees and expenses as Project Expenses.

24.     Within ten (10) business days after the date of this Order, the Receiver is authorized and directed to procure and maintain in full force and effect, and to pay out of the receivership estate the premiums for, insurance policies relating to the Property with such types of coverages, in such amounts and issued by such companies as are specified in the Loan Documents.  Each such insurance policy obtained by the Receiver shall name the Receiver, Borrowers and Plaintiff as named insureds and Plaintiff as loss payee.  Borrowers and their agents shall deliver copies of the existing insurance policies to the Receiver and are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Property that are in effect as of the date of this Order until the Receiver notifies Borrowers and Plaintiff that the Receiver has obtained insurance for the Property in accordance with this Order.  Any refunds of pre-paid insurance premiums received by Borrowers or their agents upon the cancellation of their insurance coverage for the Property is Project Income that shall be immediately remitted by Borrowers to the Receiver.  Borrowers and their respective agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Property that is in effect as of the date of this Order without the consent of the Receiver.

25.     Borrowers and their respective agents shall promptly provide their tax identification numbers and any other information requested by the Receiver in order to carry about the Receiver's duties under this order.

26.     The Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Receiver or Receiver's Property Manager to obtain possession of and to control, use, operate, maintain, improve, manage,

lease, insure, market, preserve and protect the Property and the other Borrowers' Assets and otherwise to carry out the Receiver's obligations under this Order.

27.     In holding, retaining, managing, operating, preserving and protecting the Borrowers' Assets, the Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Property and the other Borrowers' Assets.

28.     During the pendency of this action, the Borrowers, their respective agents (acting as agents of Borrowers), and all persons acting in concert with any of the foregoing are hereby enjoined and restrained:

a.     from collecting any Project Income;

b.     from taking possession of any part of the Property or any of the other Borrowers' Assets;

c.     from entering into any Lease or renewing, extending, modifying, amending in any way or terminating any Lease;

d.     from cancelling, transferring, or redirecting any transient guests or guest reservations to other hotels; and

e.     from intentionally hindering or interfering with in any way the performance of the Receiver's obligations, duties and instructions hereunder or with the Property or any of the other Borrowers' Assets or the Receiver's possession and control thereof.

29.     The Borrowers, their respective agents (acting as agents of Borrowers), and all persons and entities acting in concert with any of them (a) shall promptly deliver to the Receiver

any and all mail, notices and other written communications and shall promptly notify the Receiver of any oral notices or communications in any way relating to the Property or the other Borrowers' Assets which are received by such party on and after the date of this Order; and (b) shall cooperate, in good faith and with due diligence, with the Receiver in, among other things, transferring utilities and other services provided to the Property out of the Borrowers' name and into that of the Receiver (if the Receiver so requests), and carrying out such other terms and purposes of this Order, and if and when requested by the Receiver, shall acknowledge and confirm to persons or entities designated by the Receiver the authority of the Receiver under this Order to take possession of, hold, secure, take charge of, manage, lease, operate, preserve and protect the Property and the other Borrowers' Assets, specifically including, without limitation, the Project Income, the Project Accounts and the Project Deposits.

30.     Notwithstanding anything in this Order to the contrary, (a) to the extent Receiver intends to take any action (including any actions authorized by this Order) which is an action which requires the consent of Plaintiff under the Loan Documents if such action was to be taken by a Defendant, then Receiver shall be required to obtain such consent from Plaintiff in accordance with the terms and provisions of the Loan Documents prior to taking any such action and no action of Receiver which requires such consent shall be authorized under this Order unless Receiver first obtains such consent, and (b) Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Loan Documents, including, without limitation, exercising its rights as holder of security title to Borrowers' Assets and as a secured creditor under the Loan Documents, under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should

Plaintiff so elect. Plaintiff shall notify the Receiver of any such sale or other exercise of Plaintiff's

rights and/or remedies, and the Receiver shall cooperate with Plaintiff in the consummation of any

such action or actions, including, without limitation, execution of such deeds, bills of sale and

other documents, instruments and agreements provided that none of such documents, instruments

or agreements subject the Receiver to any personal liability.

31.     The liability of Receiver and Receiver's Property Manager is and shall be limited

to the assets of the receivership and Receiver and Receiver's Property Manager shall not be

personally liable for any actions taken pursuant to this Order except for their gross negligence or

malfeasance.  Neither Receiver, Receiver's Property Manager, nor Plaintiff shall be personally

liable for any pre-receivership expenses or any actions taken by Borrowers, its agents, employees

and any management companies engaged by Borrowers, before, during or after the receivership.

No person or entity, including any governmental entity, shall file suit against Receiver or

Receiver's Property Manager, or take other action against Receiver or Receiver's Property

Manager, regarding anything related to the Property, Receiver's action or inaction as Receiver, or

Receiver's Property Manager's action or inaction on behalf of Receiver, without an order of the

Court permitting the suit or action; provided, however, that no prior court order is required to file

a motion in this action to enforce the provisions of this Order or any other order of the Court in

this action.

32.     If and when judicial or non-judicial foreclosure proceedings against the entire

Property shall have been consummated, or upon the sale of the entire Property pursuant to a further

order or orders of this court, or upon payment of the Loan in full, and without further order of this

Court, the Receiver shall within forty-five (45) days of such occurrence move the Court to be

discharged and relieved from this Order and shall render a final report to the Court, to Plaintiff and

to Borrowers concerning the operations of Borrowers' Assets.  The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents. This Court expressly retains continuing jurisdiction over this receivership until after the rendition of the final report by the Receiver and the entry of an order discharging the Receiver.  Without limiting the foregoing, Plaintiff and the Receiver have the right to seek the termination of the Receiver upon written request to the Court, without filing a motion, which shall be effective when so-ordered by the Court.   Upon the Court so-ordering such a request, the Receiver shall within forty-five (45) days render a final report to the Court, to Plaintiff and to Borrowers concerning the operations of Borrowers' Assets.  In consideration of Receiver's/Receiver's Property Manager's preparation of a final accounting and Receiver's cooperation in connection with any transition of management of the Property to an unrelated party, the Receiver or Receiver's Property Manager shall be compensated according to the fee schedules set forth in Exhibit 3 at the conclusion of the Receivership.  The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents.

33.     Upon Receiver's discharge, Receiver shall be entitled to retain sufficient funds to pay any outstanding expenses that Receiver or Receiver's Property Manager has incurred on behalf of the Property that are authorized by this Order.

34.     The Receiver shall permit Plaintiff, and its agents and independent contractors, to inspect the Property and the Project Documents.

35.     The Receiver is required to submit proof of receiver's bond with the Clerk of this Court in the amount of $50,000 (the "Bond") within ten (10) business days of this Order. Upon the Receiver's submission of proof of Bond, the Receiver shall be authorized and empowered to perform its duties under this Order, including taking control of Borrowers' Assets (the "Effective

Date"). The cost of the Bond shall be an expense of the receivership estate, and Receiver shall be entitled to reimburse himself for the costs associated with obtaining the Bond.

36.     Plaintiff shall make initial working capital of $50,000 available for the Property as soon as reasonably practicable following the commencement of the receivership.

37.     In addition to the powers and instructions expressly set forth in this Order, the Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Property and the other Borrowers' Assets and otherwise to comply with the terms of this Order.

38.     The Receiver, Receiver's Property Manager, their employees, agents and officers shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, or malicious acts.  The receivership estate shall indemnify and hold harmless Receiver, its employees, attorneys, management companies  (including Receiver's Property Manager), contractors or control persons from any claims made by persons not a party to this Order, which claims are related to or arise out of the operation of this receivership, except in the case where Receiver or its employees, employees, attorneys, management companies, contractors or control persons have committed fraud, gross negligence or willful misconduct or acted beyond the scope of the receivership authority.

39.     In the event that a bankruptcy case is filed by any Defendant during the pendency of the receivership created by this Order, Borrowers must give notice of same to this Court, to all parties, and to the Receiver, within 24 hours of the bankruptcy filing.

40.     Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the Receiver shall do the following:

   a.   Immediately contact the Plaintiff and determine whether that party intends to move in the Bankruptcy Court for an order for both: (i) relief from the automatic stay or motion to dismiss and (ii) relief from the Receiver's obligation to turn over the Borrowers' Assets (11 U.S.C. Section 543). If the Plaintiff indicates no intention to file such a motion within 10 days, then the Receiver shall immediately turn over the Borrowers' Assets (to the trustee in bankruptcy, or if one has not been appointed, then to the Defendant), and otherwise comply with 11 U.S.C. Section 543.

   b.   If the Plaintiff notifies the Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the Receiver is authorized to remain in possession and preserve the Borrowers' Assets pending the outcome of those motions pursuant 11 U.S.C. Section 543 (a). The Receiver's authority to preserve the Borrowers' Assets is limited as follows: The Receiver may continue to collect rents, issues, and profits. The Receiver may make disbursements, but only those which are necessary to preserve and protect the Borrowers' Assets. The Receiver shall not execute any new Leases or other long-term contracts. The Receiver shall do nothing that would effect a material change in circumstances of the Borrowers' Assets.

   c.   The Receiver is authorized to retain legal counsel to assist the Receiver with the bankruptcy proceedings.

**IT IS FURTHER ORDERED**, that the Borrowers and all persons and entities acting in concert with any of them are hereby **ENJOINED** from: (a) taking any action inconsistent with the terms of this Order; (b) interfering with the Receiver exercising its powers and performing its duties pursuant to this Order; (c) removing, destroying, concealing or altering any of the Borrowers' Assets, specifically including, without limitation, the Project Records; and (d) taking any action with respect to the control, use, management, preservation, repair, maintenance, leasing or operation of the Property and the other Borrowers' Assets, except as otherwise permitted under this Order or upon the specific request of the Receiver.

**SO ORDERED** this _____ day of _____. 2021

_____
U.S. District Court Judge

**EXHIBIT 1**
**LEGAL DESCRIPTION OF THE PROPERTY**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the westerly line of Eighth Avenue with the southerly line of 47th Street;

RUNNING THENCE southerly along the westerly line of Eighth Avenue, 25 feet;

THENCE westerly and parallel with 47th Street, 100 feet;

THENCE northerly and parallel with Eighth Avenue, 25 feet to the southerly line of 47th Street;

THENCE easterly along the southerly line of 47th Street, 100 feet to the point or place of BEGINNING.

**Tax Map Designation: Section 4 Block 1037 Lot 36**

LEGAL02/40636599v8

**EXHIBIT 2**
**CERTAIN DEFINED TERMS**

As used in the Order to which this Exhibit 2 is attached, the following terms shall have the meanings ascribed thereto as set forth below:

"Gross Revenue" shall mean: (A) all amounts actually collected by Receiver as rents or other charges for use and occupancy of the Property; and (B) all miscellaneous income earned by the Property, but shall exclude income derived from: (I) proceeds of claims on account of insurance policies; (II) abatement of taxes; (III) awards arising out of takings by eminent domain; (IV) discounts and dividends on insurance policies; (V) proceeds of any sale of all or any portion of the Property.

"Lease" means any lease, sublease, license, franchise agreement (other than the Franchise Agreements), occupancy agreement and any other agreement, together with all modifications and amendments thereto, which relate to the use or occupancy of any part of the Property (including without limitation reservations for transient occupancy of the Property by Hotel guests and any agreements relating thereto).

"Loan" means that certain loan from Plaintiff to Borrowers in the original principal amount of $11,500,000.00, which is secured by the Property, among other things.

"Loan Documents" means all documents, instruments and agreements evidencing, securing or relating to the Loan, specifically including, without limitation, the Loan Documents as defined in the Complaint.

"Mortgage" means the Consolidated, Amended and Restated Fee and Leasehold Mortgage dated May 9, 2012 securing the Loan, as defined in the Complaint.

2 - 1

"Project Accounts" means collectively all checking, savings and depository accounts, all payroll, vendor, petty cash, escrow and security deposit accounts and all other accounts containing or evidencing any Project Income, defined below.

"Project Deposits" means all security and utility, prepayments, room deposits made for advance reservations, and other deposits received by Borrowers and their agents under any Lease or any other agreement relating to the ownership, operation, maintenance, repair, restoration or use of the Property, and all deposits made by Borrowers to any utility or other service provider, contractor, vendor, lessor or other person or entity in connection with any labor, services, material or other items or property relating to the Property.

"Project Documents" is defined to the broadest extent permitted under applicable law and specifically includes, without limitation: the originals of all books, records, statements, checkbooks, check registers, cancelled checks, bank and other statements, worksheets, spread sheets, memoranda, statements of account, receipts, files and other financial information; the originals of all Leases, subleases, rental agreements, occupancy agreements, license agreements and other agreements relating to the rental, occupancy, licensing and/or use of the Property (including, without limitation, the Applicable Franchise Agreement), together with all files, correspondence and communications with all past, current and prospective lessees, Tenants, occupants, licensees and/or users of the Property and their agents and representatives; the originals of all marketing, advertising, listing and promotional materials; all telephone, facsimile, e-mail and post office box numbers and addresses, the originals of all listing and commission contracts, agreements and commitments, together with all files, correspondence and communications with all brokers and their agents and representatives; the originals of all pictures, plans, floor plans, space plans, stacking plans, surveys, maps, specifications, drawings and other depictions and descriptions of the Property; the originals of all permits, licenses

LEGAL02/40636599v8

(including, without limitation, liquor licenses), authorizations and other approvals; the originals of all contracts, agreements, purchase orders, invoices, bills, receipts, account statements, files, correspondence and communications with all utility companies, service providers, contractors, subcontractors, vendors, vendees, governmental authorities, adjacent land owners and other third parties in any way relating to ownership, repair, maintenance, improvement, management, leasing, operation, use, operation, preservation and/or protection of the Property; all maintenance and testing records with respect to mechanical systems, fire life safety systems, plumbing systems, or other systems for which any Defendant has had maintenance or repair obligations within the two (2) years immediately preceding the date of this Order; the originals of all insurance policies and of all files, correspondence and communications with all insurance companies and their respective agents, brokers and representatives; copies of all local, state and federal tax returns for Borrowers and for the Property; the originals of all employee contracts and agreements and of all correspondence and communications with employees of Defendant, all employer and employee files, all payroll and employee records and copies of all local, state and federal employer and employee reports, tax deposits and returns; the originals of all notices, protests, objections, claims, demands, suits, complaints, petitions, injunctions, restraining orders, pleadings and mediation and arbitration proceedings received, sent or filed by or against the Property or Borrowers which in any way relates to or involves the Borrowers' Assets. Additionally, the term "*Project Documents*" means and includes all such documents, information, instruments and materials, whether in tangible form or in the form of websites, social media accounts, computer or electronically stored or generated images, e-mails or other data, all login names and passwords and to the extent any of such documents, information, instruments or materials are computer or electronically stored or generated, Borrowers shall provide, or cause to be provided, to the Receiver the original or copies

2 - 3

of such computer programs or other computer software as may be necessary or reasonably required by the Receiver to access, read and make tangible copies thereof, together with all access codes, combinations and passwords necessary to gain access thereto.

"Project Expenses" means all costs, expenses, payments and other monetary obligations and liabilities, specifically including, without limitation, all Hotel employee payroll expenses, all real and personal property taxes and assessments, all costs of centralized purchasing or finance services programs directly related to the Hotel and all insurance premiums relating to the Property.

"Project Income" means all rents, room fees and other income of the Property (including revenue from food and beverage services, telecommunication services and other services of the Property), issues, profits, income and other revenue of whatsoever nature or amount derived from or relating to the Property, including, without limitation, any prepaid rents, room fees and income and any termination fees or payments relating to the operation of the Property and any Lease or other contract or agreement affecting the Property and the proceeds from any insurance policy, any condemnation award and from the sale of all or any portion of the Property.

"Tenant" means any tenant, lessee, subtenant, sublessee, licensee, occupant or other user of all or any part of the Property under any current or previous Lease (including without limitation transient occupancy of the Property by Hotel guests).

**EXHIBIT 3**
**FEE SCHEDULE**

**The Receiver shall pay Receiver's Property Manager in accordance with the follow fee schedule:**

   i.    A monthly "Management Fee" equal to the greater of $7,000 or 3% of the total Gross Revenues per month;

   ii.    A monthly "Accounting Fee" equal to $1,500 per month;

   iii.    A one-time "Final Receivership Fee" equal to one month Management Fee after the conclusion of the Receivership in order to finalize all accounting and court related wind down issues;

   iv.    Reimbursement of reasonable out of pocket expenses.

LEGAL02/40636599v8